## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DERRICK DARNELL CARTER,** Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **No. 11-2733** |
| **ROBERT TANNER, et al.,** Defendants | **SECTION "E"** |

### ORDER AND REASONS

Before the Court is a motion for summary judgment[1] filed by defendants Robert Tanner and Keith Bickham (collectively, "Defendants"). Plaintiff Derrick Darnell Carter ("Carter") opposes Defendants' motion.[2] For the reasons set forth below, Defendants' motion is **GRANTED**.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This civil rights lawsuit arises out of Carter's allegations of cruel and unusual punishment while he was incarcerated at the B.B. "Sixty" Rayburn Correctional Center Rayburn Correctional Center ("Rayburn") in Angie, Louisiana.[3]

Carter's incarceration at Rayburn began on April 11, 2011. Due to his conduct during previous periods of incarceration, Carter was placed in "Extended Lockdown Level 1" ("Level 1") as soon as he arrived Rayburn. Pursuant to Rayburn policy, Carter's Level 1 status required him to be handcuffed and shackled any time he was allowed out of his cell,[4]

---

[1] R. Doc. 49.

[2] R. Doc. 58.

[3] *See* R. Doc. 1. .

[4] Level 1 prisoners are allowed to have their handcuffs and shackles removed after the prisoner is securely locked in a shower cage for a daily ten minute shower.

1

including any time he was allowed out into the exercise yard for one hour, five days a week. At the time this suit was filed on November 2, 2011, Carter remained in Level 1 and thus subject to this policy. Defendants Tanner and Bickham are the Warden and Deputy Warden of Rayburn, respectively, and Carter alleges Defendants are responsible for formulating and implementing the policy.

In his complaint, Carter claims the Rayburn policy curtailed his ability to exercise while incarcerated and thus constituted an "unjustified form of punishment" which violated his Eighth Amendment right to be free from cruel and unusual punishment.[5] Specifically, Carter claims the requirement that he remain shackled during his time in the exercise yard meant he was unable to do to "push ups, sit ups, jumping jacks, running or any exercises" in the yard. Carter further claims the small size of his Level 1 cell, coupled with the fact that Rayburn did not provide any instructional exercise programs informing Level 1 prisoners of the "proper way to perform in-cell exercise," meant "in-cell exercise [was] virtually impossible and dangerous." Carter argues his inability to "achieve a vigorous level of exercise" - which he attributes to the Rayburn policy described above - led to a series of health problems, including depression, loss of appetite, muscle aches, joint pain, weakness, lightheadedness, nausea, loss of muscle mass, and fatigue. Carter goes on to describe his various attempts to speak with Defendants about these issues, but he claims that both Defendants dismissed his complaints and told him that the restrictions would be lifted only if his conduct improved and he was placed in the less restrictive "Extended Lockdown Level 2" or into Rayburn's general population. Carter also details a number of formal "sick call" complaints and the Rayburn medical staff's response to those complaints. In light of the

---

[5] *Id.*

forgoing, Carter claims Defendants have acted with "deliberate indifference to [Carter's] safety and health" and with "evil intent and/or reckless or callous indifference to [Carter's] rights, health and safety."[6]

Pursuant to 42 U.S.C. § 1983, Carter sought the following relief from the Defendants, in both their individual and official capacities, as a result of their alleged Eighth Amendment violations: (1) a declaration that his Eighth Amendment rights have been violated; (2) a preliminary and permanent injunction against Defendants, directing them to "refrain and be enjoined from depriving plaintiff the opportunities to participate in regular out-of-cell exercise . . . without restraints"; (3) an order directing the Rayburn Level 1 exercise policy be "ceased and declared unlawful in application"; (4) compensatory damages from Defendants in the amount of $200 a day; (5) punitive damages from Defendants in the amount of $30,000; (6) an award of costs in Carter's favor; and (7) equitable relief. Carter separately filed a motion for preliminary injunction.[7]

On January 3, 2012, Magistrate Judge Knowles denied Carter's request for preliminary injunctive relief.[8] Carter appealed Judge Knowles' denial of his motion for preliminary injunction to Judge Engelhardt[9] but, before Judge Engelhardt ruled on Carter's appeal, Carter was transferred out of Level 1 and into a custodial level that did not require him to remain shackled during his time in the exercise yard.[10] On May 21, 2012, Judge

---

[6] R. Doc. 3, p. 24.

[7] R. Doc. 5.

[8] R. Doc. 8.

[9] *See* R. Doc. 11. This case was transferred from Judge Engelhardt to this Court on May 22, 2012. R. Doc. 25.

[10] *See* R. Doc. 22-1 (Rayburn record reflecting Carter's transfer).

3

Engelhardt denied Carter's appeal as moot.[11]

On September 28, 2012, Carter informed the Court that he is no longer incarcerated at Rayburn.[12] Defendants filed the instant motion for summary judgment on April 26, 2013.[13] Defendants argue there are no disputed issues of material fact and that Carter's claims all fail as a matter of law. Specifically, Defendants argue Carter's claim for permanent injunctive relief is moot and his claims for compensatory and punitive damages fail because both Defendants are entitled to qualified immunity. Defendants do not specifically address Carter's claims for declaratory relief.[14]

On June 11, 2013, at a status conference, the Court granted Defendants' motion insofar as it seeks dismissal of Carter's claim for permanent injunctive relief.[15] Because plaintiff was no longer incarcerated, the Court dismissed plaintiff's claims for injunctive relief as moot.[16] An inmate's request for injunctive *and* declaratory relief in a Section 1983 action fails to present a case or controversy and becomes moot once an inmate has been

---

[11] R. Doc. 24.

[12] *See* R. Doc. 28.

[13] *See* R. Doc. 49.

[14] Defendants also dedicate several pages of their motion to the argument that they cannot be held personally liable under § 1983 or any theory of vicarious liability for the actions of their subordinates (i.e., the officers that placed the shackles on Carter). *See* R. Doc. 49-2 at pp. 5-9. While it is true that a supervisory official may be held liable under § 1983 for a constitutional violation if it is established that he "affiirmatively participate[d] in the acts that cause the constitutional deprivation," *see Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011), Carter has not alleged that either Defendant affirmatively participated in the alleged deprivation of his rights. Carter alleges only that Defendants formulated and enforced the policy at issue. *See* R. Doc. 3 at ¶¶ 2-3. As a result, the Court need not address Defendants' vicarious liability arguments. The Court will instead focus on whether Defendants may be may be held liable under § 1983 because they "implement[ed] unconstitutional policies that causally relate" to an alleged constitutional injury. *Porter*, 659 F.3d at 446.

[15] R. Doc. 59.

[16] *See* R. Doc. 28. Carter filed a notice indicating his change of address on September 6, 2012.

4

released from prison. *Brister v. Epps*, 2013 U.S. Dist. LEXIS 150204 at *9 (S.D. Miss. Oct. 18, 2013)(citing *Herman v. Holiday*, 238 F.3d 660, 666 (5th Cir. 2001). Accordingly, Carter's request for declaratory relief also is moot.

Carter's complaint sets forth allegations against the Defendants in both their individual capacities and official capacities. A state employee acting in his or her official capacity is not a "person" subject to suit under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). It is settled law that the Eleventh Amendment bars recovery of money and damages under 42 U.S.C. § 1983 from state employees in their official capacity. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001). Accordingly, to the extent Carter seeks monetary damages against the Defendants in their official capacities, the Eleventh Amendment bars those claims against Defendants.[17]

At this stage in the proceedings, Carter's remaining claims are for compensatory and punitive damages, costs, and other just and equitable relief against the Defendants in their individual capacities.

### SUMMARY JUDGMENT STANDARD IN CASES INVOLVING THE ASSERTION OF THE QUALIFIED IMMUNITY DEFENSE

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 ; *see also Celotex Corp. v. Catrett*, 477 U.S.

---

[17] A narrow exception to Eleventh Amendment immunity exists for suits brought against individuals in their official capacity, where the relief sought is injunctive and prospective in nature. *See Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998)(citing *Ex parte Young*, 209 U.S. 123 (1980)). Although the Eleventh Amendment does not bar Carter's requests for injunctive and declaratory relief against the Defendants in their official capacity, Carter's release from prison rendered his requests for injunctive and declaratory relief moot.

317, 322-23 (1986).

Ordinarily, if the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[18] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). If the moving party successfully carries this burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists and, once the burden has shifted, the non-moving party must direct the Court's attention to something in the pleadings or other evidence in the record that sets forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist. *Celotex*, 477 U.S. at 322-24.

If, however, the party moving for summary judgment asserts a defense of absolute or qualified immunity "in good faith," as Defendants have done in this case, the burden shifts to the non-moving party to rebut that defense. *Disraeli v. Rotunda*, 489 F.3d 628, 631 (5th Cir. 2007) (citing *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633-34 (5th Cir. 2000)); *Gates v. Tex. Dept. of Protective and Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) ("In the summary judgment context, a government official need only plead qualified immunity, which then shifts the burden to the plaintiff.") (citation omitted). In this situation, the party moving for summary judgment on an immunity defense "can support its motion by relying on the pleadings alone," *id.*, and the non-moving party bears the burden of setting forth, by competent evidence, a genuine issue for trial. *See Beard v.*

---

[18] If the dispositive issue is one on which the non-moving party will bear the burden of proof at trial, the moving party may ordinarily satisfy its burden by simply pointing out that the evidence in the record is insufficient with respect to an essential element of the non-moving party's claim. *See Celotex*, 477 U.S. at 325.

*Banks*, 548 U.S. 521, 529 (2006). While a party asserting a qualified immunity defense can support a motion for summary judgment by relying on the pleadings alone, the non-moving party cannot rely solely on the pleadings; instead, he is required (as is the moving party in the typical summary judgment motion) to "set forth specific facts showing that there is a genuine issue for trial." *Id.* In The non-moving party may rebut the qualified immunity defense "by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates*, 537 F.3d at 419. Where, as here, a plaintiff's complaint is verified, the contents of that complaint may be considered competent summary judgment evidence, so long as those contents otherwise comply with Rule 56. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

With all summary judgment motions, whether or not they involve the invocation of an immunity defense and regardless of which party bears the burden of proof, the Court is required to draw all reasonable inferences in favor of the non-moving party when resolving disputed issues of fact. *Beard*, 548 U.S. at 529. That said, in a qualified immunity case, when resolving "disputed matters of professional judgment," as the Court is often asked to do in such cases, the Court's "inferences must accord deference to the views of prison authorities." *Id.* Assuming there are no genuine factual disputes, "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Id.*

## ANALYSIS

**A.    The Eighth Amendment and a Prisoner's Conditions of Confinement**

It is well-settled that "the treatment a prisoner receives in prison and the conditions

7

under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment of the United States Constitution, incorporated against the states via the Due Process Clause of the Fourteenth Amendment, protects persons from cruel and unusual punishment. *State of Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947). Carter claims the Rayburn policy of requiring Level 1 prisoners to remain handcuffed and shackled while on the exercise yard is cruel and unusual punishment and thus a violation of his Eighth Amendment rights.

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (citations omitted). "The [Eighth] Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* (quotation marks and citations omitted). That said, the "Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998).

The Supreme Court has established a two-part test to determine whether a prisoner has established a constitutional violation relating to the conditions of his confinement. *Farmer*, 511 U.S. at 834. In *Hernandez v. Velasquez*, 522 F.3d 556 (5th Cir. 2008), a case involving a prisoner's claim that lack of exercise opportunities rose to the level of an Eighth Amendment violation, the Fifth Circuit set forth this two step test as follows:

> To maintain this action under the Eighth Amendment, Hernandez must meet two requirements. First, he must show that his confinement resulted in a deprivation that was "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S.

> 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotation and citation omitted). It is well settled that "the Constitution does not mandate comfortable prisons," and that prison conditions may be "restrictive and even harsh" without running afoul of the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *see also id.* at 347, 101 S.Ct. 2392 (noting that such conditions are "part of the penalty that criminal offenders pay for their offenses against society"). Nonetheless, conditions may not be "grossly disproportionate to the severity of the crime warranting imprisonment." *Id.* The Supreme Court has defined a "sufficiently serious" deprivation under the Eighth Amendment as the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (quoting *Rhodes*, 452 U.S. at 347, 101 S.Ct. 2392).
>
> Assuming Hernandez can show a sufficiently serious deprivation, he also must show that prison officials acted with "deliberate indifference" to his health or safety. *Id.* This follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.*; *see also id.* at 837, 114 S.Ct. 1970 ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847, 114 S.Ct. 1970. This knowledge requirement is subjective: The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. 1970.

*Id.* at 560-61; *see also Haralson v. Campuzano*, 356 F. App'x 692, 696 (5th Cir. 2009) ("To succeed on [a] conditions-of-confinement claim, [a prisoner] must show that (1) his confinement, objectively speaking, resulted in a deprivation that was sufficiently serious; and (2) that prison officials acted with deliberate indifference.")(citing *Farmer*, 511 U.S. at 834).

**B.     A Prisoner's Right to Physical Exercise and the Eighth Amendment**

Before turning to the specific details of Carter's allegations, the Court notes that

9

cases involving prisoners' complaints about the lack of ability to exercise while incarcerated are not uncommon, and thus a fairly well-developed body of case law exists regarding a prisoner's right and ability to exercise under the Eighth Amendment. The Supreme Court has identified exercise as a "identifiable human need" for which the Eighth Amendment provides protection. *Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991). Among other things, deprivation of exercise may constitute an unconstitutional impairment of a prisoner's health, actionable under the Eighth Amendment, and the Fifth Circuit has noted on a number of occasions that the absence of exercise opportunities may constitute a constitutional violation. *See, e.g., Green v. Ferrell*, 801 F.2d 765, 771-72 (5th Cir. 1986); *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982), *modified on other grounds*, 688 F.2d 266 (5th Cir. 1982); *Maze v. Hargett*, 200 F.3d 814, at *3 (5th Cir. 1999) (unpublished); *Hewitt v. Henderson*, 271 F. App'x 426, 428 (5th Cir. 2008) (unpublished); *Hernandez*, 522 F.3d at 560-61; *Haralson*, 356 F. App'x at 696-97. The right to exercise is not absolute, however, and deprivation of exercise is not a *per se* constitutional violation. *Hernandez*, 522 F.3d at 560 n. 5 (internal citations omitted).

**C.    Application**

As explained above, to succeed on a conditions-of-confinement claim and to overcome a qualified immunity defense, Carter must show (1) that his confinement "resulted in a deprivation that was objectively, sufficiently serious" and (2) "that prison officials acted with deliberate indifference to his health or safety." *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). The Court will assume Carter has met the "objective prong" and that the Level 1 exercise policy was a sufficiently serious deprivation. As such,

10

the issue in this case turns on the "subjective prong" of the analysis.[19]

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011)(internal quotation marks omitted). "A prison official acts with deliberate indifference only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it." *Id.* at 346 (internal quotation marks and alterations omitted). The knowledge requirement is subjective: the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 847. Under *Farmer*, prison officials cannot be found to have acted with deliberate indifference if: (1) "they were unaware of even an obvious risk to inmate health or safety," (2) "they did not know of the underlying facts indicating a sufficiently substantial danger," (3) "they knew of the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent," or "they knew of a substantial risk to inmate health or safety [and] responded reasonably to the danger, even if the harm was not ultimately averted." *Id.* at 845. [O]nly the unnecessary and wanton infliction of pain implicates the Eight Amendment." *Id.* at 834.

The Court finds that Carter cannot show Defendants were deliberately indifferent to his health or safety under *Farmer* because there is no indication the complaints from

---

[19] In their motion for summary judgment, Defendants' main argument is that Carter failed to allege deliberate indifference in that he failed to allege a "pattern of similar violations." *See* R. Doc. 49-2 at pp. 7-9, 13-14. Defendants argue a "constitutionally deficient policy cannot be inferred from a single wrongful act." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011)). While Defendants correctly state the rule than a supervisor may not be liable for a single act, in this case Carter alleges Defendants implemented a policy such that all prisoners on a Special Management Unit (SMU) are deprived the same exercise opportunities. *See* R. Doc. 3, p. 2.

11

which he suffered posed a substantial risk of serious harm. Carter's verified complaint alleges he suffered from depression, loss of appetite, muscle aches, joint pain, weakness, lightheadedness, nausea, loss of muscle mass, and fatigue. The Fifth Circuit has found substantially similar conditions do not pose a "substantial risk of serious harm." *Hernandez*, 522 F.3d at 561 (finding the plaintiff's complaints of muscle atrophy, stiffness, loss of range of motion and depression did not pose a "substantial risk of harm" sufficient to constitute an Eighth Amendment violation). Accordingly, Carter has not raised an issue of fact as to whether he suffered a "serious illness or injury" sufficient to constitute an Eighth Amendment violation. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).

Although it is unclear from the pleadings, Carter's pro se complaint could also be read to allege an impairment of health claim based on the treatment he received at Rayburn. *Miller v. Carson*, 563 F.2d 741, 751 n. 12 (denial of exercise may constitute an "impairment of health" actionable under the Eighth Amendment). To prevail on an impairment of health claim, Carter must show a "serious medical need and the prison officials' deliberate indifference to it." *Hernandez*, 522 F.3d at 561 (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Carter has not shown that prison officials failed to reasonably address his medical needs. Carter repeatedly made sick call requests and the Rayburn medical staff prescribed treatments each time he made a formal sick call. Viewing the facts alleged in Carter's verified complaint in the light most favorable to him, Carter cannot Defendants treated him

with "wanton disregard" for his medical needs. *Id.* As such, Carter cannot show "deliberate indifference" on behalf of Defendants and he has failed to raise a genuine issue for trial to defeat Defendants' assertion of qualified immunity. Summary judgment in favor of Defendants is warranted.

## CONCLUSION

**IT IS ORDERED** that Defendants' motion for summary judgment be and hereby is **GRANTED**.

New Orleans, Louisiana, this 31st day of March, 2014.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**